**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────────

**JOHN LUKASZEWSKI and JAMES GROSSI,**

                         **Plaintiffs,**

         **v.**                                                    **1:08-CV-483**
                                                                    **(FJS/RFT)**

**COUNTY OF ULSTER,**

                         **Defendant.**

─────────────────────────────────────────────

**APPEARANCES**                              **OF COUNSEL**

**BLUSTEIN, SHAPIRO, RICH**                  **BURT J. BLUSTEIN, ESQ.**
**& BARONE, LLP**                            **JAY R. MYROW, ESQ.**
10 Matthews Street
Goshen, New York 10924
Attorneys for Plaintiffs

**ROEMER WALLENS GOLD**                      **EARL T. REDDING, ESQ.**
**& MINEAUX LLP**
13 Columbia Circle
Albany, New York 12203
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiffs filed their original complaint on May 5, 2008, *see* Dkt. No. 1, which they

amended on July 29, 2009, *see* Dkt. No. 21.  In their amended complaint, Plaintiffs asserted the

following four causes of action: (1) for unpaid accumulated overtime pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 216; (2) for liquidated damages pursuant to the FLSA, 29

U.S.C. § 216(b); (3) for reasonable attorney's fees and costs pursuant to the FLSA, 29 U.S.C.

§ 216(b); and (4) for breach of contract based on Defendant's adoption of a resolution, as it was allowed to do under General Municipal Law § 90, permitting payment of overtime compensation to its employees.[1]

Currently before the Court is Defendant's motion for summary judgment.


## II. BACKGROUND

At all relevant times, Plaintiffs were employees of Defendant's Department of Highways and Bridges.  Plaintiff Lukaszewski has served in various capacities during his employment, including as a Field Operations Supervisor and a Section Supervisor.  *See* Amended Complaint at ¶ 6.  Plaintiff Grossi has served, at all times, as a Section Supervisor.  *See id.* at ¶ 7.  Starting in 1995, Plaintiffs began to accrue a significant amount of compensatory time, which Defendant provided to them in lieu of payment for the overtime hours that they worked.  On March 9, 2000, Defendant's Legislature passed Resolution 109, which modified Defendant's Personnel Policy Manual as it pertained to its employees' accrual and use of compensatory time.  In pertinent part, Resolution 109 provided that

> [c]ompensation for work beyond the basic/normal workweek for administrative/managerial/supervisory responders will be as follows:
>
> * * * * * * * * * *
>
> 3. Supervisory level employees are eligible for overtime after 40 hours; 35 hour supervisory employees accrue compensatory time after 35 hours per week to maximum 40 hours per week not to

---

[1] In their original complaint, Plaintiffs also alleged a cause of action pursuant to New York Civil Service Law § 135.  In a Memorandum-Decision and Order dated June 23, 2009, the Court dismissed that claim.  *See* Dkt. No. 16.

exceed 35 hours total, and subject to the same restrictions as under section 2 above. The following are supervisory employees: Section Supervisors, Supervising Nurse, Director of Housekeeping, etc., (list is illustrative, not exhaustive).

*See* Dkt. No. 38-13, Exhibit "B."

In a letter dated May 2000, clarifying Resolution 109, Thomas J. Costello, Defendant's Personnel Officer, stated that "Category 3 employees may accrue 35 hours of compensatory time. A Category 3 employee who works over 40 hours in a week is eligible for overtime for time worked in excess of 40 hours. There will be no payment for accrued compensatory time upon leaving County service." *See* Dkt. No. 38-13, Exhibit "C."

On August 2, 2000, Defendant advised Plaintiffs that they were not entitled to the compensatory time that they had accrued prior to March 4, 2000. Plaintiffs allege that, from 2000 through 2002, they expressed to James Donahue, Director of the Department of Highways and Bridges, their concerns about losing their accrued compensatory time. Mr. Donahue informed them that their concerns were being looked into and would be addressed.

In September 2002, Plaintiffs and several other Section Supervisors met with Defendant to discuss Defendant's new policy regarding accrued compensatory time. Initially, Defendant offered Plaintiffs and the other Section Supervisors twenty-five cents on the dollar as compensation for their accrued compensatory time. They refused that offer. However, as a result of this meeting, on October 22, 2002, the parties entered into a Memorandum of Agreement ("MOA"), effective September 20, 2002, whereby Defendant allowed Plaintiffs and five other employees the opportunity to use their accrued compensatory time by December 31, 2006.[2]  The

---

[2] Although the MOA includes an end date of December 31, 2006, Plaintiffs assert that

(continued...)

MOA also stated that Plaintiffs would forfeit any compensatory time that they did not use by

December 31, 2006.[3]  Specifically, the MOA provided as follows:

> This will serve as an understanding for the use of current
> compensatory time.  A final draft will be reviewed by the Office of
> the County Attorney.
>
> Memorandum of Agreement
> By and Between
>
> The county of Ulster and the Ulster County Department of
> Highways and Bridges Field Operations Manager, Section
> Supervisors, and Bridge Supervisor.
> The following shall constitute the compensatory time
> settlement for the above referenced employees, effective
> September 20, 2002.  The following shall settle any and all claims
> for compensatory time accumulated by the above referenced
> employees prior to resolution #109, dated March 9, 2000.
> These Highway and Bridges supervisory employees have
> accumulated compensatory time, duly recorded in the Ulster
> County Clerk's Office from approved time sheets, which the
> County of Ulster addresses as follows:
> 1. the parties agree that attachment A
> accurately reflects the compensatory hours as listed.
> 2. the parties agree that the use of said hours
> will be accomplished, and that all claims for
> compensatory time will expire December 31, 2006.
> 3. the parties agree that the Commissioner of
> Highways and Bridges must authorize the use of
> compensatory time in lieu of or in addition to, sick
> and vacation days.

---

[2](...continued)
Defendant agreed that the "final agreement" would not include an end date. *See* Dkt. No. 41 at 1.
In fact, Mr. Donahue testified at his deposition that, because of the amount of compensatory time
involved, Plaintiffs would not have been able to use their time by the December 31, 2006 end
date. *See* Dkt. No. 41-2 at 23.  Therefore, Mr. Donahue testified that it was his understanding
that the time in which to use the compensatory time would be extended. *See id.*

[3] Although not provided for in the MOA, Mr. Donahue testified that his understanding
was that, if Plaintiffs did not use their accrued compensatory time by the time that they retired,
the remaining compensatory time would be paid out in cash. *See* Dkt. No. 41-2 at 25.

This settlement shall be filed with the office of the Ulster County Clerk.

*See* Dkt. No. 38-13, Exhibit "E."

Thomas J. Costello, Defendant's Personnel Officer, signed the MOA on behalf of Defendant on October 23, 2002. *See id.* Plaintiffs also signed the MOA. *See id.*

Pursuant to the MOA, Plaintiffs began using their accrued overtime; however, they were unable to use all of their accrued time before December 31, 2006. Plaintiffs assert that, in August 2006, they approached Defendant about extending the expiration date, which they believed was not part of the final MOA. Plaintiffs prepared a letter dated October 7, 2006, which extended the date by which they had to use their accrued compensatory time. The Chairman of the County Legislature, David Donaldson, signed the proposed extension.[4]

On February 6, 2007, Defendant removed Plaintiffs' remaining accrued compensatory time from their payroll records. On May 5, 2008, Plaintiffs commenced this action.

## III. DISCUSSION

### A. FLSA framework

"The FLSA . . . was enacted to ensure that employees receive a 'fair day's pay for a fair day's work[.]'" *Gorman v. Con. Edison Corp.*, 488 F.3d 586, 589 (2d Cir. 2007) (quotation omitted). The Supreme Court has noted that "[t]he principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981), and observed

---

[4] Defendant asserts, however, that it never approved the letter and, in fact, Plaintiff Lukaszewski never signed this new agreement. *See* Dkt. No. 38-16 at 2.

-5-

that the protections of the FLSA encompass "an individual employee's right to a minimum wage and to overtime pay," *id.* at 740.

Section 207 of the FLSA, entitled "Maximum hours," governs overtime pay and provides generally that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Although this requirement did not initially apply to public-sector employers, Congress amended the FLSA to subject States and their political subdivisions to its constraints, at first on a limited basis . . . and then more broadly." *Christensen v. Harris Cnty.*, 529 U.S. 576, 579 (2000) (citations omitted).

"[T]o mitigate the effects of applying the FLSA to States and their political subdivisions," Congress passed the Fair Labor Standards Amendments of 1985, which "permit States and their political subdivisions to compensate employees for overtime by granting them compensatory time at a rate of 1 ½ hours for every hour worked." *Id.* (citation omitted). The compensatory time amendment provides, in pertinent part, that

> [e]mployees of a public agency which is a State, political
> subdivision of a State, or an interstate governmental agency may
> receive, in accordance with this subsection and in lieu of overtime
> compensation, compensatory time off[5] at a rate not less than one
> and one-half hours for each hour of employment for which
> overtime compensation is required by this section.

---

[5] "FLSA compensatory time" and "FLSA compensatory time off" "are interchangeable terms under the FLSA. Compensatory time off is paid time off the job which is earned and accrued by an employee in lieu of immediate cash payment for employment in excess of the statutory hours for which overtime compensation is required by section 7 of the FLSA." 29 C.F.R. § 553.22(a).

29 U.S.C. § 207(o)(1).

Defendant's motion for summary judgment is based on its contention that Plaintiffs are not covered employees within the meaning of the FLSA and, alternatively, even if they are covered employees, the statute of limitations bars their claims.

**B.      Plaintiffs' status under the FLSA**

Under the FLSA, when an employee contends that he is subject to overtime compensation, the employer has the burden "to establish by clear and convincing evidence that one of the FLSA's exemptions to the overtime requirements applies, and therefore the employee is not entitled to overtime pay."  *Wright v. Monroe Cnty., N.Y.*, No. 05-CV-6268T, 2007 WL 1434793, *2 (W.D.N.Y. May 14, 2007) (citations omitted).  To do so, "the employer must establish that the employee 'fit[s] plainly and unmistakably within [the exemption's] terms.'"  *Id.* (quotation omitted).

In this case, because Plaintiffs claim that they are covered employees, Defendant bears the burden of establishing that Plaintiffs fit unmistakably within the "executive employee" exemption to the FLSA.  Pursuant to the FLSA's regulations, an employee employed in a bona fide executive capacity means any employee who meets the following qualifications: (1) "[c]ompensated on a salary basis at a rate of not less than $455 per week . . ."; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof'"; (3) "[w]ho customarily and regularly directs the work of two or more other employees"; and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing,

advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).  As defined in the regulations, "management" includes, but is not limited to, selecting and training employees, directing the work of employees, disciplining employees, planning and controlling budgets, and assessing employees' work performance for the purpose of recommending promotions.  *See* 29 C.F.R. § 541.102.

To determine what constitutes an employee's primary duties, a court must consider all aspects of the employee's job, including, but not limited to, the relative importance of the employee's management duties compared to his other duties, the amount of time the employee spends on management duties, and the relative freedom the employee has from direct supervision.  *See* 29 C.F.R. § 541.700(a).[6]  Deciding what duties an employee actually performs is a question of fact, whereas, "[t]he question whether [his] particular activities exclude[] [him] from the overtime benefits of the FLSA is a question of law[.]"  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (citation omitted).

In this case, during most of the relevant time period, both Plaintiffs served as Section Supervisors.  Plaintiff Grossi has served as a Section Supervisor since 1995.  *See* Dkt. No. 38-5 at 5-6.  Plaintiff Lukaszewski has served in various capacities since 1995: (1) Section Supervisor from January 2, 1995, until January 1, 2000, and from August 13, 2004, until December 27, 2005; (2) Field Operations Manager from January 1, 2000, until February 9, 2004, and from December 27, 2006, until July 16, 2007; (3) Acting Commissioner from February 9, 2004, until August 13, 2004; and (4) Highways and Bridges Field Operations Manager from July 16, 2007

---

[6] Although not dispositive, "employees who spend more than 50 percent of their time performing [management] work will generally satisfy the primary duty requirement."  29 C.F.R. § 541.700(b).

until November 29, 2008.  As Section Supervisors, Plaintiffs were responsible for "anything that happen[ed] on a County road or happen[ed] in the County right-of-way[.]"  *See* Dkt. No. 38-5 at 8.  For example, Plaintiffs were responsible for dealing with "accidents, snowstorms, road work, [and] dead deer."  *See id.*

In addition, Plaintiffs supervised a number of other employees.  *See id.* at 10.  Each day, Plaintiff Grossi traveled to each of the four substations in his area to set out the daily routine for the employees he supervised.  *See id.* at 12-13.  Plaintiffs, however, did not have the authority to hire or fire their employees or even determine what work their sections would undertake.  *See id.* at 14-15; *see also* Dkt. No. 41-3 at ¶ 3.  Moreover, Plaintiffs did not have the authority to purchase materials needed to perform their jobs; instead, they sent requests for such materials to the Director of Operations.  *See* Dkt. No. 38-5 at 17-18.  Furthermore, in their affidavits in opposition to Defendant's motion for summary judgment, both Plaintiffs asserted that they spent ths majority of their time in the field, performing manual labor.  *See* Dkt. No. 41-3 at ¶ 3; Dkt. No. 41-5 at ¶ 4.  Finally, Mr. Donahue, the former Commissioner of Highways and Bridges, testified that Plaintiffs' departments were chronically understaffed, which often required Plaintiffs to work twenty-four hour days, assisting with the work that their employees were unable to complete.  *See* Myrow Aff. at Exhibit "A."

On the other hand, Defendant argues in its memorandum of law that both Plaintiffs acted in a managerial capacity because their job responsibilities included overseeing employees, preparing the Department's budget and because they had the authority to hire, fire, advance or demote other employees or make such suggestions.  *See* Dkt. No. 38-16 at 19, 21.  However, to support its position, Defendant relies entirely on Plaintiffs' job descriptions and not on the actual

duties that Plaintiffs performed. Although Defendant submitted the affidavit of Brenda Bartholomew to support its claim that Plaintiffs were exempt employees, Ms. Bartholomew was not a County employee until October 2006 and was not permanently employed as the County's Personnel Officer until June 2007. Thus, she has no personal knowledge of Plaintiffs' actual job duties, nor does she claim to have any such personal knowledge. Instead, she relies entirely on Plaintiffs' job descriptions as the basis for her statements about the work that Plaintiffs performed.

Based on the record, the Court finds that Defendant has not only failed to establish by clear and convincing evidence that Plaintiffs are executive employees within the meaning of the FLSA, but it has not even come forward with sufficient evidence to raise an issue of fact in this regard. Therefore, the Court concludes that, with the possible exception of the time during which Plaintiff Lukaszewski served as Acting Commissioner, Plaintiffs are covered employees within the meaning of the FLSA.[7]

C.    **Statute of limitations for FLSA claims**

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)). "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress

---

[7] The Court finds that there is an issue of fact as to whether Plaintiff Lukaszewski was a covered employee during the time that he served as Acting Commissioner.

intended to draw a significant distinction between ordinary violations and willful violations."
*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).

Proof of willfulness requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quotation omitted). To show that an FLSA violation is willful, an employee must prove that the employer was more than negligent. *See McLaughlin*, 486 U.S. at 135. Neither an employer's "good-faith but incorrect assumption" regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness. *See id.* It is the plaintiff's burden to show willfulness. *See id.* at 133.

Based on the record, the Court finds that Plaintiffs have failed to come forward with any evidence to suggest that Defendant's violations of the FLSA were willful. Thus, any of Plaintiffs' claims that accrued prior to May 5, 2006, two years prior to the date on which Plaintiffs commenced this action, are time-barred.

"'Courts have held that for purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period.'" *Addison v. Reitman Blacktop, Inc.*, No. 10-CV-1435, 2011 WL 4336693, *6 (E.D.N.Y. Sept. 9, 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)) (citing 29 C.F.R. § 790.21(b) ("[A] cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the

period in which the workweek ends."))[8]

Plaintiff Lukaszewski submitted a document entitled "Employee Comp Time Earned/Used Record," which shows that, subsequent to May 5, 2006, he earned and used the following compensatory time:

| Week of | Comp Earned | Comp Used |
|---|---|---|
| 6/11/06-6/17/06 | | 22.0 |
| 7/16/06-7/22/06 | 5.0 | |
| 10/22/06-10/28/06 | 3.0 | |
| 11/12/06-11/18/06 | 2.0 | |
| 12/10/06-12/16/06 | 2.0 | |

Plaintiff Lukaszewski submitted another document entitled "Use of 'Other' Time Earned from 1995 through 3/4/2000."[9] The first page of this document, which is for 2002, has a column entitled "'Other' Time Remaining" with a Balance Forward at the beginning of 2002, of 3,077 hours.[10]

Plaintiff Grossi did not submit a document entitled "Employee Comp Time Earned/Used

---

[8] Plaintiffs assert that their FLSA claims accrued no earlier than February 6, 2007. *See* Plaintiffs' Memorandum of Law at 6. To support this claim, they argue that, "[n]ot until February 6, 2007, when the Defendant unilaterally, arbitrarily and without prior notice, voided the remaining overtime of each Plaintiff from their payroll records (Redding Declaration, Exhibit "H", p. 50-51), did an actual controversy exist between the parties as to the payment of Plaintiffs' accrued overtime." *See id.* at 7. This argument is clearly without merit. Both the FLSA regulations, as well as the case law interpreting those regulations, are to the contrary.

[9] In the amended complaint, Plaintiff Lukaszewski states that "from a period inclusive of January 1, 1995 through December 31, 2006 [he] worked a total of 3,346.5 uncompensated overtime hours for the Defendant which, pursuant to law, were required to be paid at a rate of one-and-a-half hours for each such hour of employment, and the Plaintiff Lukaszewski has accumulated thereby a total of 5,019.75 overtime hours." *See* Amended Complaint at ¶ 8. Furthermore, Plaintiff Lukaszeski asserts that he "has been paid for 2,155.50 of said overtime hours as compensatory time, leaving a total of 2,864.23 overtime hours unpaid." *See id.*

[10] Beginning with the year 2004, the pages of this document include the words "per agreement" in the heading.

-12-

Record."  However, he did submit a document entitled "Use of 'Other' Time Earned from 1995 through 3/4/2000."  Based on these submissions, it appears that Plaintiff Grossi did not earn any compensatory time after 2001.[11]

Therefore, applying the two-year statute of limitations to Plaintiffs' FLSA claims, the Court concludes that only Plaintiff Lukaszewski has stated claims that are timely.  According to the record, Plaintiff Lukaszewski earned a total of 12 hours of compensatory time during the two-year statute-of-limitations period.  Therefore, pursuant to the FLSA, Defendant must pay him for any of those hours of compensatory time that he had not used at the time his employment with Defendant terminated at either "(A) the average regular rate received by such employee during the last 3 years of the employee's employment, or (B) the final regular rate received by such employee, whichever is higher."  29 U.S.C. § 207(o)(4).

---

[11] In the amended complaint, Plaintiff Grossi states that "between October 15, 1995 and January 20, 2001 [he] worked a total of 2,275 uncompensated overtime hours which pursuant to law were required to be paid at a rate of one-and-a-half hours for each hour of employment, and the Plaintiff Grossi has accumulated thereby a total of 3,412.5 overtime hours."  *See* Amended Complaint at ¶ 9.  He further states that he has "been paid for 1,575 of said overtime hours as compensatory time, leaving a total of 1,837.5 overtime hours unpaid."  *See id.*

**D.     Equitable estoppel**[12]

To invoke the doctrine of equitable estoppel, the plaintiff must show the following

elements: "(1) the defendant made a definite misrepresentation of fact, and had reason to believe

that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on the misrepresentation

to his detriment. . . ." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (internal

citation omitted).  Furthermore, "a plaintiff 'must show that he brought his action within a

reasonable time after the facts giving rise to the estoppel have ceased to be operational.'"  *Id.* at

1494 (quotation omitted).  Thus, "where a plaintiff's cause of action has accrued, but a later

misrepresentation by the defendant equitably estops that defendant from asserting the limitations

period as a defense, the plaintiff must still bring his action within a reasonable time after actual

or constructive knowledge of the misrepresentation."  *Id.* (citations omitted).  A good benchmark

for what constitutes a reasonable time "is the 'unused' portion of the limitations period."  *Id.*

(citation omitted)

In this case, Plaintiffs' arguments regarding equitable estoppel are confusing at best.

Plaintiffs appear to argue that Defendant's policy, from 1995 to March 9, 2000 (the date on which

its Legislature passed Resolution 109), of acknowledging the overtime that Plaintiffs worked by

entering the overtime in their payroll records and paying Plaintiffs for their overtime when they

used it as compensatory time constituted a definite misrepresentation of fact.  *See* Plaintiffs'

---

[12] The Court notes that, although Defendant spends a considerable amount of time
addressing why Plaintiffs cannot rely on the doctrine of equitable tolling to extend the statute of
limitations for their FLSA claims, Plaintiffs explicitly state in their memorandum of law that
"Defendant is mistaken that Plaintiffs contend that the statute of limitations is equitably tolled in
this matter. . . . Plaintiffs assert the doctrine of equitable estoppel, **not tolling**, bars Defendant
from invoking the statute of limitations."  *See* Plaintiffs' Memorandum of Law at 5 (emphasis
added).  Therefore, the Court will not address the doctrine of equitable tolling.

Memorandum of Law at 3.  Furthermore, Plaintiffs contend that there is no question that they

justifiably relied on this policy "as the Defendant's actions in paying out Plaintiffs [sic] accrued

overtime as compensatory time was consistent with the policy as described to Plaintiffs."  *See id.*

at 4.

      In response, Defendant argues that its "decision to allow Plaintiffs the opportunity to use

their allegedly accumulated compensatory time on or before December 31, 2006 is not a definite

misrepresentation of fact."  *See* Defendant's Reply Memorandum of Law at 3.  Furthermore,

Defendant asserts that it did not conceal anything and, in fact, "entered into an agreement

whereby Plaintiffs could use their allegedly accrued overtime by a certain date."  *See id.*

      Much of Defendant's argument is based on its assertion that "[f]rom 1995 to March 9,

2000, [the date that Defendant's Legislature passed Resolution 109] Plaintiffs . . . were exempt

employees under the FLSA and not entitled to overtime or compensatory time."  *See* Defendant's

Memorandum of Law at 1 (citing Statement of Material Facts ¶ 19).  Defendant also argues that,

"[o]n August 2, 2000, Plaintiffs were advised that they were not entitled to compensatory time

alleged to have accumulated prior to March 4, 2000."  *See id.* (citing [Statement of Material

Facts] ¶ 24).

      Finally, Defendant appears to argue that, at the latest, Plaintiffs were aware of their

claims on August 2, 2000, when Defendant advised them that they were not entitled to the

compensatory time that they had accumulated prior to March 4, 2000.  *See* Defendant's Reply

Memorandum of Law at 3.  Between August 2000 and September 2002, when Plaintiffs signed

the memorandum of agreement regarding the use of their compensatory time, Defendant notes

that "Plaintiffs fail to set forth any allegation, let alone a fact, that between [those two dates]

Defendant misrepresented any fact or did anything in any way to preclude Plaintiffs from commencing this action within the statutory limits." *See id.*

Alternatively, Defendant asserts that Plaintiffs' delay in commencing this action until May 5, 2008, was unreasonable because, "[u]nder the 'unused portion' analysis and Plaintiffs' argument that the statute of limitations did not begin to run until their compensatory time was 'zeroed out', Plaintiffs' commencement of this action more than fourteen months after their compensatory time was 'zeroed out' is also unreasonable." *See id.* at 3-4 (citing *Buttry*, 68 F.3d at 1494-95 (six month delay unreasonable)).[13]

In determining whether it should apply equitable estoppel and, if so, what effect its application would have on Plaintiffs' claims, the Court must first decide when, if ever, Defendant made an affirmative misrepresentation of fact on which Plaintiffs reasonably relied to their detriment. Plaintiffs proffer three different dates on which Defendant allegedly made an affirmative misrepresentation: (1) March 9, 2000, the date on which Defendant's Legislature passed Resolution 109; (2) August 2, 2000, the date on which Defendant informed Plaintiffs that they were not entitled to the compensatory time that they had accrued prior to March 4, 2000; and (3) February 6, 2007, the date on which Defendant removed the overtime hours that Plaintiffs had accrued from their payroll records. The Court has reviewed each of these

---

[13] The Court notes that the *Buttry* court did not hold that a six-month delay was unreasonable as a matter of law. In *Buttry*, two-thirds of the six-month statute of limitations period had elapsed before the alleged misstatement and then the plaintiff waited an additional six months, which was the full period of the statute of limitations period, before commencing his action. It was the total period of time that the court found unreasonable. The court based its determination on the fact that the statute of limitations for the plaintiff's claim was six months. *See Buttry*, 68 F.3d at 1495. Unlike the situation in *Buttry*, the statute of limitations for Plaintiffs' FLSA claims is two years; thus, under these circumstances, a delay of six months in bringing the action is not necessarily unreasonable as a matter of law.

alternatives and concludes that the only statement that even arguably constitutes a material misrepresentation is Defendant's August 2, 2000 statement that Plaintiffs were not entitled to the compensatory time that they had accrued prior to March 4, 2000.[14]

Assuming that Defendant's August 2, 2000 statement was an "affirmative misrepresentation" and that Plaintiffs reasonably relied on that misrepresentation to their detriment, then Plaintiffs could potentially assert claims that accrued on or after August 2, 1998.[15]

The next question the Court must answer is whether Plaintiffs unreasonably delayed in bringing their claims that accrued during that time period.  Based on the record and the applicable law, the Court finds that Plaintiffs did unreasonably delay in bringing all of their claims that accrued in the period between August 2, 1998, and August 2, 2000, because, even for the last claim that accrued during that time period, i.e., the claim that accrued on August 1, 2000, the statute of limitations would have expired on August 1, 2002; and Plaintiffs waited almost six years to bring that claim – from August 1, 2002, when the statute of limitations expired, until May 5, 2008, when they filed this action.  The Court reaches this conclusion as follows.  Under the doctrine of equitable estoppel, the defendant must make the misrepresentation after the claim accrues.  Therefore, because Defendant made the alleged misrepresentation on August 2, 2000, the last date on which any of Plaintiffs' claims that could be saved by the application of equitable

---

[14] The Court notes that, under the doctrine of equitable estoppel, the misrepresentation must occur **after** the claim accrued; therefore, the doctrine of equitable estoppel only applies to claims that accrued prior to August 2, 2000.

[15] The statute of limitations for any claim that accrued prior to August 2, 1998, would have expired prior to the alleged misrepresentation on August 2, 2000.

estoppel would have accrued on August 1, 2000, one day prior to the alleged misrepresentation. Thus, at the time of the misrepresentation, only one day of the statute-of-limitations period would have expired and one year and 364 days would have remained in the limitations period. The end of that period would have been August 1, 2002. Not only did Plaintiffs not file their claim by that date, they waited almost six more years before commencing this action. Under any standard, such a delay is unreasonable as a matter of law.

Accordingly, for the above-stated reasons, the Court concludes that, even if it were to apply equitable estoppel in this case, that doctrine would not save any of Plaintiffs' untimely claims for which they could raise this defense.


**E.      Plaintiffs' breach-of-contract claims**

Despite Defendant's contention to the contrary, Plaintiffs' fourth cause of action does sufficiently allege a breach-of-contract claim. Plaintiffs base their claim on the fact that, under General Municipal Law § 90, Defendant's Legislature had the authority to pass a resolution providing for the payment of overtime and compensatory time to Defendant's employees. Section 90 provides, in pertinent part, that

> [t]he governing board of each municipal corporation or other civil
> division or political subdivision of the state . . . by ordinance, local
> law, resolution, or order or rule, may provide for the payment of
> overtime compensation to any or all public officers except elective
> officers and those officers otherwise excluded by law and to any or
> all public employees under their jurisdiction at the regular basic
> pay rate of such officers or employees for all time such officers or
> employees are required to work in excess of their regularly
> established hours of employment or at such other rate as such
> governing board . . . may authorize. . . .

-18-

N.Y. Gen. Mun. Law § 90.

Plaintiffs, however, cannot maintain their breach-of-contract claims because the basis for those claims is that Defendant failed to compensate them for all of the overtime hours that they worked. Thus, to the extent that Plaintiffs are covered employees within the meaning of the FLSA, the FLSA preempts such claims. *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011). Therefore, because Plaintiff Grossi was, at all relevant times, a covered employee, the FLSA preempts his breach-of-contract claim.

As noted, however, between February 9, 2004, and August 13, 2004, Plaintiff Lukaszewski served as the Acting Commissioner of Highways and Bridges. If a jury were of conclude that, during that time, Plaintiff Lukaszewski was an exempt employee, the FLSA would not preempt his breach-of-contract claim against Defendant for the hours of overtime/compensatory time that he earned during the time that he served as Acting Commissioner.

As noted, Section 90 of the General Municipal Law provides that the governing board of a political subdivision of the state has the authority to provide for the payment of overtime compensation to its employees by "ordinance, local law, resolution, or order or rule." N.Y. Gen. Mun. Law § 90. The only document in the record that fits into this category is Resolution 109. However, rather than relying on Resolution 109 as a basis for his breach-of-contract claim, Plaintiff Lukaszewski appears to rely on the MOA that he signed with Defendant. Section 90 does not provide for such an agreement nor does § 90 provide that Defendant's Personnel Officer can enter into any such agreement on behalf of Defendant. Thus, although Plaintiff Lukaszewski specifically refers to § 90 in his breach-of-contract cause of action, that statute does not appear to

apply to this claim.

Furthermore, whether Plaintiff Lukaszewski relies on Resolution 109 or the MOA as the basis for his breach-of-contract claim, his claim fails. First, if the Court concludes that Resolution 109 is the relevant contract, Plaintiff Lukaszewski's' claim fails because, under this Resolution, the Commissioner of Highways and Bridges, a Department Head, is not eligible for compensatory time or overtime and, thus, Defendant did not breach Resolution 109 by not paying Plaintiff Lukaszewski for the overtime hours he worked when he was Acting Commissioner of Highways and Bridges. Moreover, to the extent that Plaintiff Lukaszeski attempts to argue that, when he was Acting Commissioner, he did not have the authority of the Commissioner and, therefore, was really still a Section Supervisor, he cannot maintain his breach-of-contract claim because, as a Section Supervisor, he was a covered employee under the FLSA and, thus, the FLSA would preempt any such claim.

In the alternative, if the Court were to determine that the MOA is the relevant contract, as Plaintiffs contend, Plaintiff Lukaszewski's claim still fails because the MOA only covers the hours that he accrued prior to the passage of Resolution 109 on March 9, 2000, which does not include the time frame in which he served as Acting Commissioner. Accordingly, for all these reasons, the Court grants Defendant's motion for summary judgment and dismisses Plaintiffs' breach-of-contract claims.


## IV. CONCLUSION

After reviewing the entire record in this matter, including the parties' submissions, and the applicable law, and for the above-stated reasons, the Court

**ORDERS** that Defendant's motion for summary judgment with respect to Plaintiffs' breach-of-contract claims is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment with respect to Plaintiff Grossi's FLSA claims is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment with respect to Plaintiff Lukaszewski's FLSA claims is **GRANTED in part and DENIED in part**;[16] and the Court further

**ORDERS** that Plaintiffs' counsel shall initiate a telephone status conference, using a professional teleconferencing service, with the Court and opposing counsel on **April 3, 2012**, at **9:30 a.m.**

**IT IS SO ORDERED.**

Dated: March 22, 2012
          Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[16] As a result of this decision, Plaintiff Lukaszewski's first cause of action survives with respect to any of the 12 hours of compensatory time that he earned after May 5, 2006, for which Defendant did not pay him. His second and third causes of action survive as well.